## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 12 2024

JEFFREY P. COLWELL
CLERK

Civil Action No. _____1:23-cv-03425_____
(To be supplied by the court)

Mark S. ELLIS _____, Plaintiff

v.

**Jury Trial requested:**
**(please check one)**
__X__ Yes _____ No

Amanda RETTING _____,

Xaviera TURNER _____,

Kristi STANSELL _____,

Kyle JONES _____,

Justin ENSINGER _____,

DOES 1-50 _____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## FIRST AMENDED VERIFIED PRISONER COMPLAINT

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Mark Stephen ELLIS,        DOC No. 115149
Colorado Territorial Correction Facility, Box 1010   Canon City, CO, 81215-1010
  (Name, prisoner identification number, and complete mailing address)

    N/A
  (Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

  X   Convicted and sentenced state prisoner
_____   Other: *(Please explain)* _____

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:   Amanda Retting, Sex Offender Treatment and Monitoring Program (SOTMP) Director
          (Name, job title, and complete mailing address)

          CDOC, 1250 Academy Park Loop, Colorado Springs, CO  80910

          At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?   X   Yes ___ No (*check one*).  Briefly explain:

          Ms. Retting is the SOTMP Director in the State of Colorado.

          Defendant 1 is being sued in her   X   individual and   X   official capacity.

Defendant 2:   Xaviera Turner, SOTMP therapist/treatment provider
          (Name, job title, and complete mailing address)

          CDOC, 1250 Academy Park Loop, Colorado Springs, CO  80910

          At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?   X   Yes ___ No (*check one*).  Briefly explain:

          Ms. Turner is a therapist and treatment provider for SOTMP at the Colorado Territorial Correctional Facility (CTCF).

          Defendant 2 is being sued in her   X   individual and   X   official capacity.

Defendant 3:   Kristi Stansell (a.k.a. "Kristy Stansell"), SOTMP supervisor
     (Name, job title, and complete mailing address)

   CDOC, 1250 Academy Park Loop, Colorado Springs, CO  80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

   Ms. Stansell was the supervisor overseeing the therapists and treatment providers for SOTMP at the CTCF.

Defendant 3 is being sued in her __X__ individual and __X__ official capacity.

Defendant 4:   Kyle Jones, SOTMP Return to Treatment Committee Chairman, and SOTMP Program Coordinator
     (Name, job title, and complete mailing address)

   CDOC, 1250 Academy Park Loop, Colorado Springs, CO  80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

   Mr. Jones was the Chairman of the Return to Treatment Committee and the SOTMP therapist and treatment provider coordinator.

Defendant 4 is being sued in his __X__ individual and __X__ official capacity.

Defendant 5:   Justin Ensinger, SOTMP Supervisor at the CTCF, and SOTMP Therapist.
     (Name, job title, and complete mailing address)

   CDOC, 1250 Academy Park Loop, Colorado Springs, CO  80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

   Mr. Ensinger is the SOTMP Supervisor at the CTCF, and SOTMP Therapist

Defendant 5 is being sued in his __X__ individual and __X__ official capacity.

Defendant 6:   John and Jane Does
     (Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

DOE Defendants are sued in their __X__ individual and __X__ official capacities.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

  __X__   State/Local Official (42 U.S.C. § 1983) (42 U.S.C. § 1985) (42 USCS 2000cc)

  ___   Federal Official

        As to the federal official, are you seeking:

        ___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

        ___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

  ___   Other: *(please identify)*

## D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  *42 USC Section 1983 - 1st Amendment U.S. Constitution*

        Claim one is asserted against these Defendants: RETTING, TURNER, STANSELL, JONES, ENSINGER, and DOES 1-50

CLAIM TWO:  *42 USC Section 1983 – 6th and 14th Amendments, U.S. Constitution*

        Claim two is asserted against these Defendants: RETTING, TURNER, STANSELL, JONES, ENSINGER, and DOES 1-50

CLAIM THREE:  *42 USC Section 1983 – 8th and 14th Amendments, U.S. Constitution*

        Claim three is asserted against these Defendants: RETTING, TURNER, STANSELL, JONES, ENSINGER, and DOES 1-50

CLAIM FOUR:  *42 USC Section 1985(3) (Civil Conspiracy)*

        Claim four is asserted against these Defendants: RETTING, TURNER, STANSELL, JONES, ENSINGER, and DOES 1-50

CLAIM FIVE:  *42 USC 2000cc - Religious Land Use and Institutionalized Persons Act*

        Claim five is asserted against these Defendants: RETTING, TURNER, STANSELL, JONES, ENSINGER, and DOES 1-50

## 1.    VENUE

    Venue is proper pursuant to 28 USC Section 1391(b)(2) because the Defendants reside in this District, and the evens and omissions giving rise to Plaintiff's claims occurred in this District.

## 2.    INTRODUCTION

    The Plaintiff, Mark S. Ellis (hereinafter "Ellis"), is presently incarcerated in the Colorado

Territorial Correctional Facility (CDOC) arising from an August 26, 2002 conviction for sexual assault on a child. In May 2021, 13 years after Ellis' parole eligibility date, Ellis was admitted to the Sex Offender Treatment and Monitoring Program (SOTMP). On May 2, 2022, Ellis was terminated from the SOTMP program without substantive or procedural due process.

Upon closer inspection, Ellis' termination was based, *inter alia*, on his reliance in his Christian beliefs and faith, which the CDOC's SOTMP therapeutic treatment team and SOTMP Board considers to be a "*criminal thinking error*" and "*distorted core belief.*"

In addition to the manifest infringement of Ellis' right to practice his Christian faith without punishment or interference, the SOTMP therapeutic treatment team and the SOTMP Return to Treatment Committee infringed upon Ellis' 1st Amendment right to meaningfully seek redress through both informal and formal grievances regarding the management and the efficacy of the SOTMP program. Moreover, in denying Ellis' grievances, the SOTMP grievance coordinator advised Ellis: "***The decision of the SOTMP Termination Review Panel is final. The Offender may not appeal, nor is the decision grievable,***" [sic]. As such, the CDOC admits the lack of due process in the instant matter.

It is undisputed that treatment is vital to the custodial component of a SOLSA sentence. While the statute does vest some degree of discretion in the CDOC, such discretion is not as to whether a sex offender should receive treatment; rather, it is as to what kind of treatment is "appropriate."

Without treatment, the conditions of a SOLSA confinement are fundamentally and irretrievably altered; Ellis has lost a segment of the sentence which the General Assembly deemed necessary and appropriate to punishment, rehabilitation, and reentry into society at large.

The withholding of Ellis' treatment works a major change in the conditions of his confinement, since his status has changed from eligible to be considered for parole to ineligible to be considered for parole. Such a change has, without doubt, caused a serious impact on Ellis' morale, outlook, and hope for the future, and motivation to pursue rehabilitation. As such, there can be no serious dispute that the deprivation of treatment amounts to a grievous loss to Ellis. In fact, this untenable deprivation of rights has created an environment which constitutes cruel and unusual punishment, and has caused Ellis severe emotional, psychological and physical harm, pain, and suffering.

As discussed in detail in the **Statement of Facts** section, *infra*, Ellis provides the following examples of the chilling and hostile statements made by members of the SOTMP treatment team:

(a) "*It happens very often that you disagree with the therapists in here. Stop doing that;*" (b) "*You are a "waste of time;*" (c) [you need] "*mental health help;*[1]" (d) "*Your victim probably*

---

[1] In a derogatory, rather than a therapeutic sense.

*doesn't even want you out of prison in a year, or two years, or five years, or ever;*" (e) "*I do not have time to answer questions . . . this is not about you;*" (f) "*You Christians often use religion as an excuse for your sexually assaultive behaviors;*" (g) "*I know you claim to be [a Christian] what does the Bible say about people who hurt children . . . you will have a lot to answer for [before God];*" (h) "*We are not here to support you guys;*" (i) [We will terminate offenders] "*for using big words,*" and, "*thinking they are smarter than I am*" [said a therapist referring to himself]; (j) "*Suck it up, buttercup;*" (k) "*Man culture is a slippery slope;*" (l) "*Locker room talk leads to rape culture;*" and (m) "*Snitches get stitches.*"

It is often said that "*justice delayed is justice denied.*" Here, it can be said that "*treatment delayed is treatment denied.*" Following that logic and reasoning, Ellis asserts that "***treatment delayed is justice denied.***"

## 3.   STATEMENT OF FACTS
### i. Parties
#### (a) Plaintiff

1. Plaintiff, Mark S. Ellis (hereinafter "Ellis") is a state prisoner incarcerated at the Colorado Territorial Correction Facility, in Canon City, Colorado.

2. Plaintiff Ellis is 69 years of age.

3. Ellis was convicted by a jury on August 26, 2002, of sexual assault on a child by a person in a position of trust.

4. Ellis was initially sentenced on October 16, 2002.

5. The sentence imposed by the trial court was "*15 years to life,*" with the bottom number of 15 years conditioned upon an "*indeterminate sentence.*"

6. Based upon the original number of 15 years, Ellis was first eligible for parole on 09/19/08

7. On 06/11/08, a parole hearing was conducted, three months prior to Ellis' *Parole Eligibility Date.*

8. Parole was denied in 2008 due to the fact Ellis was not enrolled in SOTMP, as required by statute.

9. On or about February 4, 2009, Ellis was granted a reduction of sentence pursuant to a Rule 35(b) motion, which reduced the sentence to "*12 years to life,*" with the bottom number of 12 years being conditioned upon an "*indeterminate sentence.*"

#### (b) Defendants

10. Amanda Retting ("Retting") is the SOTMP Director.

11. Xaviera Turner ("Turner") is a SOTMP therapeutic treatment team member, and primary therapist.

12. Kristi Stansell (a.k.a. Kristy Stansell) ("Stansell") was a SOTMP therapeutic treatment team member, and Supervisor of the SOTMP at CTCF prison.

13. Kyle Jones ("Jones") is the SOTMP Coordinator and Chairman of the SOTMP Return to Treatment Committee.

14. Justin Ensinger ("Ensinger") is a SOTMP therapeutic treatment team member and supervisor.

### ii. History of Successful Progression

15. From May 4, 2021 through April 12, 2022, Ellis completed, submitted and received approval for approximately 60 SOTMP "homework assignments," in-class projects and worksheets.

16. From May 4, 2021 through April 12, 2022, Ellis submitted to several polygraph examinations, and participated in the "*In-Reach*"[2] event conducted by SOTMP staff.

### iii. SOTMP Termination and Subsequent Parole Denial

17. On November 9, 2021, **19 years after Ellis' initial sentencing date**, Ellis presented his equities and parole plan to a Colorado State Parole Review Board via a virtual meeting.

18. On November 9, 2021, Ellis advised the Parole Review Board Chairman, Dr. Matthews, that Ellis was SOTMP compliant from May 4, 2021 to November 9, 2021.

19. On 11/19/21, Ellis presented his parole application and plan to the Colorado Parole Board.

20. On information and belief, the Parole Board, apparently satisfied with Ellis' progression in SOTMP treatment, "*tabled*" Ellis' application for parole, pending Ellis' completion.

21. On November 16, 2021, Ellis was informed that his status as "*tabled*" provided that, upon "*successful completion*" of the SOTMP, Ellis would be paroled back into the community.

22. On May 2, 2022, Turner and Stansell served Ellis with a document notifying Ellis of his termination from the SOTMP.

23. On information and belief, Ellis' termination from the SOTMP was based upon members of the treatment team conspiring to wrongfully terminate Ellis from the program in violation of Ellis' *liberty interest* to participate in the program; Ellis' First Amendment rights to practice his religion; Ellis' right to grieve the SOTMP program and its members; and Ellis' right to Equal Protection.

24. On information and belief, the notice of termination was in violation of CDOC Administrative Regulation **AR 700-32 IV(A)(1)(a)(b)(c)(d)** and **AR 700-19 IV(I)(1)**, insofar as Ellis' termination from the program was not in accord with these administrative regulations.

25. The May 2, 2022 notice of termination proceedings stated:

> (a) "*You [Ellis] did not finish presenting this assignment*" [Week 4 probation] (b) "*You [Ellis] gave your therapist a letter that you stated you intended to send off to your fourteen (14) year*

---

[2] Ellis was advised by the therapeutic treatment team that the SOTMP "in-reach" event was offered to sex offenders who were making significant progress in the SOTMP.

*old granddaughter. Let it be noted that your case was staffed when you entered treatment for 5.7. This was denied by SOTMP management. You are informed of this. The client asked to be re-staffed for 5.7. The SOTMP provider informed you she will staff this with the CST. Therefore, at this time, you were not approved for 5.7 or to have written contact with your minor grandchildren."* (c) *"On 03-24-2022, you [Ellis] took a polygraph . . . In this polygraph, it stated, 'The subject stated that on October 31ˢᵗ, he did write a letter to a lady friend on the outside' that detailed sexual activities he would like to do to with her' ... Let it be noted, that this information has not been discussed by you, either in group therapy or to your primary therapist."*[3]

26. On or about May 3, 2022, SOTMP therapeutic treatment team member Ensinger advised Ellis he would **not** be allowed to call therapists as witnesses, or have Ellis' SOTMP sponsor, (James B. Ellis) testify during the termination hearing, or present during the meeting via Web-ex.

27. On or about May 3, 2022, SOTMP therapeutic treatment team member Ensinger advised Ellis he would **not** be allowed to call SOTMP group members as witnesses during the termination meeting.

28. On May 5, 2022, Ellis attended the formal SOTMP termination hearing via Web-ex.

29. The May 5, 2022 termination hearing was conducted by SOTMP therapeutic treatment team members Jessica Archuleta, Bart Cox, and Anthony Hudson.

30. The May 5, 2022 termination hearing was observed by SOTMP therapist Ensinger.

31. The May 5, 2022 termination hearing was **not** observed or conducted by an independent arbiter.

32. During the May 5, 2022 termination hearing, Ellis was **not** allowed to question Turner, as Turner had testified *in camera* before the hearing, outside of Ellis' presence.

33. On May 6, 2022, Stansell and SOTMP therapeutic team member Cousins served Ellis with a copy of the *"Disposition of SOTMP Termination Review."*

34. The *"Disposition of SOTMP Termination Review"* was signed by Jessica Archuleta, Bart Cox, and Anthony Hudson.

35. The May 6, 2022 *Disposition of SOTMP Termination Review* made the following findings, (emphasis added in bold):

(a) *"... the SOTMP Therapist [Turner] **provided testimony** and evidence of your **failure to progress in treatment** since you were enrolled on 05/04/21."*[4] (b) *"... you are **not internalizing your treatment** to mitigate your offense related risk factors.*[5]*"* (c) *"You were not open and honest about your continued **pattern of behaviors** with your treatment team."* (d) *"... you had been placed on probation for these **behaviors** yet you continue to participate in these **behaviors** and continued to struggle with engaging in these **behaviors**."* (e) *"You admitted you have*

---

[3] Grammatical errors in the original.

[4] The SOTMP therapist was **not** present during the proceedings, and **not** subject to cross-examination.

[5] Ellis asserts that an "offense related risk factor" includes alleged "distorted core beliefs" and "criminal thinking errors" identified in SOTMP documents to include religiosity.

*engaged in such **behaviors** as admitting to **intellectualizing in group to show your superiority**
and you had witness letters stating that you do argue in groups.*" (f) "*You were minimizing
about your sexually abusive behaviors for the index crime and did not take accountability for
your behaviors that were listed through out [sic] the termination document but rather had an
excuse for why they occurred.*" (g)  "*You were also in violation of the Treatment Contract
Rules that were listed in your Notice of Suspension and Right to SOTMP Termination Review
as well as you failed to cooperate with SOTMP Treatment.*"[6]

36. A careful comparison of the original termination document dated May 2, 2022 with the May 6,
2022 *Disposition* document reveals that the reasons cited in the *Disposition* do not correspond with
the original reasons for the termination as cited in the termination document.

37. On or about June 24, 2022, Parole Board Member D. Harvey revoked Ellis' favorable "*tabled
status.*" i.e. **parole was denied**.

38. On information and belief, the revocation of "*tabled status*" and **denial of parole** was due to the
May 6, 2022 "*Disposition of SOTMP Termination Review.*"

### iv. Ellis' Response to Termination

39. On May 7, 2022, Ellis sent a "kite" (official intra-prison note) to the SOTMP therapeutic treatment
team, requesting CDOC forms for reentry to SOTMP.

40. On May 10, 2022, Ellis sent a "kite" to Turner requesting CDOC forms for reentry to SOTMP.

41. Ellis wrote letters to Governor Jared Polis, former DOC Director Dean Williams, former SOTMP
Director Alison Talley, Parole Board member Dr. Brandon Matthews, interim DOC Executive
Director Andre Stancil, SOTMP Program Coordinator Kyle Jones, and SOTMP Director Amanda
Retting, grieving the wrongful termination, and requesting reinstatement to SOTMP.

### v. Return to Treatment Committee

42. On July 8, 2022, Ellis sent a completed copy of his "*SOTMP Reentry Questionnaire*" via first class
mail, to the SOTMP *Return to Treatment Committee* at CDOC headquarters.

43. On September 21, 2022, Ellis received a response from the SOTMP *Return to Treatment
Committee*, asking for additional information and clarification relating to re-entry into SOTMP.

44. On September 26, 2022, Ellis returned, via first class mail, additional information and clarification
to the SOTMP *Return to Treatment Committee*, in support of his efforts to return to SOTMP.

45. On January 29, 2023, in exercise of his First Amendment right to grieve actions by the
government, Ellis sent the SOTMP Program Administrator a letter in which Ellis wrote:

> "*Please take a few moments to read this letter as it conveys my feelings concerning the
> treatment I received while participating in the sex offender program.*" "*It has been nine months*

---

[6] Ellis denies all of these allegations.

*since I was **wrongfully terminated** from the program …" "This situation is **patently unfair**,
and has caused me and my family a great deal of anguish."* (Emphasis added)

46. On April 13, 2023, Ellis attended a Web-ex meeting with five members of the SOTMP *Return to
    Treatment Committee.*

47. Those in attendance during the April 13, 2023 *Return to Treatment* meeting were: Kyle Jones; S.
    Hess; R. Mosier; T. Gremillion; and K. Archuleta. Also in attendance was Case Manager Gabriel.

48. On 05/18/23, Ellis attended a follow-up meeting via Web-ex with the *Return to Treatment Committee.*

49. Those in attendance during the May 18, 2023 meeting were Kyle Jones and Tracy Gremillion.
    Also in attendance was Case Manager Gabriel.

50. On May 18, 2023, during the meeting, Ellis received a one-page, unsigned letter from the
    *"Returnees committee"* and *"SOTMP leadership team,"* dated May 4, 2023, which contained an
    additional set of questions.

51. The May 4, 2023 letter (which was served to Ellis on May 18, 2023) stated, *inter alia*:

    (a) *"Your letter you sent to SOTMP in January 2023 was staffed with the Returnees Committee,
    as well as the SOTMP leadership team…"* (b) *"Your letter you chose to write indicates you
    require further review of your accountability regarding behaviors that let [sic] to your
    unsuccessful discharge…"* (c) *"You have been sub coded an 'E'[7] awaiting resubmission of
    your updated assignments,"* and (d) *"If you do not resubmit the corrections asked for regarding
    your homework within **6 months** your sub-code may be changed to a 'D.'"*[8]

52. Ellis asserts the *"Returnees Committee"* May 4, 2023 letter demonstrates a callous disregard and/or
    deliberate indifference to Ellis' *liberty interest* to participate in the program; Ellis' First
    Amendment rights to practice his religion; Ellis' right to grieve the SOTMP program and its
    members; and Ellis' right to Equal Protection.

53. Ellis asserts the *Return to Treatment Committee* letter of May 4, 2023 manifested hostility,
    indifference, and callous disregard by stating:

    (a) ***"How does writing a letter** placing blame on treatment and SOTMP staff … align with your
    goal of getting back into treatment;" [sic] (b) "… address your manipulation, as well as your
    power and control as it pertains to dictation of treatment;" (c) "How can entitlement thinking
    impact your treatment progress?" and (d) "Do you think your **recent behaviors** have increased
    your risk…?"* (Emphasis added)

54. Ellis asserts the only "behavior" Ellis engaged in which could be deemed a "criminal thinking

---

[7] *"Evaluation,"* which indicates Ellis was removed from the "P" (pending) sub-code, and therefore
removed from the SOTMP Global Referral waitlist.
[8] This designation indicates Ellis is not eligible for SOTMP, and therefore ineligible for parole or
community corrections consideration.

error," (See *Section vii, infra*) was exercising Ellis' Christian religious faith and practicing religion as Ellis saw fit, thus demonstrating a callous disregard and/or deliberate indifference to Ellis' First Amendment rights, and Ellis' right to Equal Protection.

55. On May 22, 2023, Ellis sent a "kite" to Case Manager Gabriel which requested the identity of the author of the May 4, 2023 letter, as well as confirmation that the letter did not include a second page. (*See paragraph 151 infra for Defendant Jones' response*).

56. The May 22, 2023 "kite" to Case Manager Gabriel also requested confirmation that Ellis had been removed from the SOTMP "*wait list*." (*See paragraph 151 infra for Defendant Jones' response*).

57. On 06/15/23, Ellis sent a letter to the Administrator of the SOTMP, Amanda Retting, taking umbrage with the termination, and formally requesting to be readmitted to the program by **July 15, 2023**, without regression, or the addition of new assignments, polygraph examinations or "homework."[9]

58. On June 17, 2023, Ellis sent a letter to the *Return to Treatment Committee*, responding to their May 4, 2023 letter, taking issue with the letter's vague and ambiguous language regarding allegations of unspecified "behaviors," and requesting clarification of certain statements made in the "*Returnees Committee*" letter dated May 4, 2023, including requests for identification of the so-called "behaviors."

59. As of the date of this Complaint, Ellis has **not** received a response from the *Return to Treatment Committee* regarding Ellis' responses to the committee's May 4, 2023 letter.

60. With their failure to respond within 6 months, the *Return to Treatment Committee* has effectively blocked Ellis' return to the SOTMP, demonstrating a callous disregard and/or deliberate indifference to Ellis' *liberty interest* to participate in the program; Ellis' First Amendment rights to practice his religion; Ellis' right to grieve the SOTMP program and its members; and Ellis' right to Equal Protection. (*See paragraph 51 supra*).

### vi. Defendants Personal Participation
### (a) Amanda Retting

61. Defendant Retting is the CDOC Director of SOTMP.

62. As Director of the SOTMP, Retting has the authority to correct Elis' wrongful termination, or conduct an investigation into the matter, yet refuses to do so.

63. On June 15, 2023, Ellis wrote a letter to Retting, informally grieving Ellis' wrongful termination from the SOTMP, and requesting reinstatement to SOTMP on or before July 15, 2023.

---

[9] As of the date of this Complaint, Retting has not responded.

64. As of the date of this Complaint, Retting has **not** responded to Ellis' letter of June 15, 2023.

65. Based upon, *inter alia*, Retting's refusal to respond to the June 15, 2023 letter, Ellis initiated the CDOC's formal grievance process.

66. As of the date of this Complaint, Retting has failed to reinstate Ellis to the SOTMP.

67. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to act with callous disregard and deliberate indifference to Ellis' health and safety, in violation of Ellis' right to be free of *cruel and unusual punishment.*

68. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to act with callous disregard and deliberate indifference to Ellis' right to *Due Process*.

69. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to act with callous disregard and deliberate indifference to Ellis' *liberty interest* created under SOLSA.

70. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to act with callous disregard and deliberate indifference to Ellis' right to exercise his religion as he sees fit.

71. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to interfere with Ellis' right to *equal protection.*

72. Based upon Retting's actions and failures to act, Ellis asserts Retting conspired to interfere with Ellis' rights under RLUIPA insofar as he was placed in the untenable position of having to abandon central tenants of his Christian faith in order to be returned to treatment, and to "successfully progress" in treatment, or maintain his adherence to Christianity, thereby being labeled with "criminal thinking errors," which are contrary to returning to treatment and successful progression.

### (b) Xaviera Turner

73. Defendant Turner was Ellis' primary SOTMP therapist at CTCF.

74. On May 27, 2021, during a SOTMP group session, Turner addressed Ellis, and in a hostile and argumentative tone yelled, "*It happens very often that you [Ellis] disagree with the therapists in here. Stop doing that.*"

75. On May 27, 2021, during a SOTMP group session, Turner told Ellis, "*You use **religiosity** as a way to avoid taking responsibility.*"

76. On June 9, 2021, Ellis met privately with Turner, and asked, "*What is required of me to succeed? This is very important to me, and I believe with your help I can succeed.*" In response, Turner refused to comment, but instead rolled her eyes before offering a menacing stare.

77. On or about July 22, 2021, Ellis sent a "kite" to Turner asking for a meeting to discuss his progress

in the SOTMP.

78. On August 24, 2021, during a SOTMP group session, Turner returned Ellis' July 22, 2021 "kite" with the following responses:

(a) anger; (b) yelling; (c) allegations of "*over analyzing*" and "*intellectualizing*;" (d) degrading language; (e) threats of termination for unspecified "*behaviors*;" (f) allegations of disruptive group behavior; (g) allegations that Ellis was a "*waste of time*;" (h) sarcastic statements that Ellis required "*mental health help*;" (i) allegations that Ellis had "*emotional disturbances*;" and (j) an aggressive stare.

79. On August 24, 2021, Turner aggressively and sarcastically said to Ellis, "*Your **victim** probably doesn't even want you out of prison in a year, or two years, or five years, **or ever**.*"

80. As a consequence of the August 24, 2021 SOTMP group session, Ellis felt and continues to feel publically humiliated and in danger as a result of Turner's actions.

81. On November 17, 2021, during a private meeting with Ellis, Turner was excessively hostile, and expressed her frustration that the Colorado Parole Board had granted Ellis the favorable "*tabled status*," stating, "*They're not to supposed to do that without checking with me.*"

82. On December 27, 2021, during an individual meeting, Ellis participated in completing the proper form as required by Section 5.7 of the SOTMP standard, allowing Ellis to have contact with Ellis' grandchildren.

83. On December 28, 2021, during a SOTMP group session, Ellis requested a copy of the completed Section 5.7 form from Turner. As of the date of this Complaint, Ellis has not received a response.

84. On December 28, 2021, during a SOTMP group session, Turner alleged that her records reflected a "*no opinion*"[10] result on a polygraph examination administered to Ellis, which was conducted by Jenks & Associates on or about December 15, 2021.

85. On December 28, 2021, during a SOTMP group session, Turner alleged that Ellis had admitted during the December 15, 2021 polygraph examination to viewing pornographic material.[11]

86. On December 28, 2021, during a SOTMP group session, Ellis contemporaneously and vehemently denied viewing any pornographic material, as alleged by Turner.

87. Ellis asserts that Turner's untrue allegations of Ellis viewing pornographic material showed deliberate indifference and callous disregard for Ellis' safety in a prison environment where sex offenders are subject to dangerous rumors, and grievous physical harm.

88. On December 28, 2021, during a SOTMP group session, Ellis asked Turner to review the audio

---

[10] Meaning that there was no opinion as to whether Ellis was deceptive during the polygraph results.
[11] An allegation Ellis strongly denies.

and video recording of the polygraph examination, which would prove Ellis had never made such a disclosure regarding pornography.

89. On December 28, 2021, during a SOTMP group session, Turner refused to provide Ellis with an audio or video recording of her allegations . . . allegations made in front of other inmates.

90. On December 28, 2021, during a SOTMP group session, Turner gave a dismissive/sarcastic sigh when addressing Ellis regarding the polygraph examination, and then stated, "*You should think long and hard about your answer*."

91. On December 28, 2021, during a SOTMP group session, Ellis asked Turner to provide Ellis with a copy of the "*no opinion*" polygraph transmittal summary. To date, neither the CDOC nor Turner has provided a "session summary," or a copy of the "*no opinion*" polygraph examination.

92. On December 28, 2021, following a group session, Ellis attempted to ask Turner questions concerning Turner's negative comments which had been added to Ellis' draft *Risk Management Plan*.

93. On December 28, 2021, in response to Ellis' query regarding comments added to the draft *Risk Management Plan*, Turner became angry and stated, "*I do not have time to answer questions . . . this is not about you.*"

94. As a consequence of the December 28, 2021 SOTMP group session, and the statements made by Turner, Ellis felt and continues to feel publically humiliated as a result of Turner's actions.

95. On January 4, 2022, Ellis made the following personal journal note regarding a conversation between Ellis and his adult daughter:

> "*[My daughter] told me two people were listening in on my parole hearing, which I suspected. They are mad with the result of the board, and are filing an appeal. That may explain why **Turner** and Stansell are so set on trying to terminate me from the program. Obviously, if I am not in the program, parole would suspend their decision.*"

96. On information and belief, Defendants **Turner** and Stansell have been in contact with Ellis' former spouse, who has, on information and belief, made statements that she will persuade the DOC to keep Ellis out of SOTMP treatment, thereby subjecting Ellis to *life without parole*.

97. On April 1, 2022, Ellis attended a SOTMP *Risk Management Plan* meeting with members of the treatment team, including Turner, and other SOTMP group members.

98. On or about April 10, 2022, the SOTMP therapeutic team, including Turner, posted a notice of a *Risk Management Plan* meeting, which **publically** identified four CTCF inmates as sex offenders.

99. On April 11, 2022, at the appointed time, Ellis went to the control movement gate along with the rest of those scheduled for a *Risk Management Plan* meeting, due to the fact Ellis had attended the

14

first *Risk Management Plan* meeting on April 1, 2022.

100. On April 11, 2022, while attempting to attend the *Risk Management Plan* meeting, Ellis was advised by Turner, while at the security gate, that Ellis was **not** included in the meeting.

101. On April 11, 2022, when asked by Ellis if there was a reason Ellis was no longer part of the *Risk Management* group, Turner appeared agitated and exhibited evasive and deceptive behaviors, exclaiming "*No*" in a raised voice, turning away from Ellis in a dismissive posture, while refusing eye contact.

102. On April 11, 2022, in response to Ellis' further inquiry as to whether Ellis had done anything wrong, Turner was became evasive, angry, and in a loud voice stated, "*You're not in this group!*"

103. On April 19, 2022, following a SOTMP group session, Ellis concluded Turner was callously and deliberately ignoring his treatment, and that Turner was purposefully refusing to work on Ellis' *Risk Management Plan.*

104. On May 2, 2022, Ellis briefly met with Stansell and **Turner**, and was again faced with hostility and sarcasm from **Turner**, who callously, and with a tone of satisfaction, advised Ellis he was, "*terminated from the program.*"

105. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired with the other Defendants to interfere with the Parole Board's decision to place Ellis on "*tabled status.*"

106. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to act with callous disregard and deliberate indifference to Ellis' health and safety, in violation of Ellis' right to be free of *cruel and unusual punishment.*

107. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to act with callous disregard and deliberate indifference to Ellis' right to *Due Process*.

108. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to act with callous disregard and deliberate indifference to Ellis' *liberty interest* created under SOLSA.

109. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to interfere with Ellis' right to *equal protection.*

110. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to act with callous disregard and deliberate indifference to Ellis' right to exercise his religion as he sees fit.

111. Based upon Turner's actions and failures to act, Ellis asserts Turner conspired to interfere with Ellis' rights under RLUIPA insofar as he was placed in the untenable position of having to abandon central tenants of his Christian faith in order to be returned to treatment, and to "successfully progress" in treatment, or maintain his adherence to Christianity, thereby being

labeled with "criminal thinking errors," which are contrary to returning to treatment and successful progression.

### (c) Kristi Stansell

112. Kristi Stansell was the CDOC supervisor for the SOTMP at CTCF.

113. On May 5, 2021, Ellis wrote a letter to Stansell, asking for permission to have contact with Ellis' grandchildren.

114. As of the date of this Complaint, Ellis has not received a response to the May 5, 2021 letter.

115. On July 11, 2021, Ellis sent a second letter to Stansell, asking for permission to have contact with Ellis' grandchildren.

116. As of the date of this Complaint, Ellis has not received a response to the May 11, 2021 letter.

117. On September 1, 2021, Ellis participated in a meeting with **Stansell** and Turner at CTCF.

118. During the September 1, 2021 meeting, Stansell:

(a) questioned Ellis regarding Ellis' sexual history; (b) accused Ellis of assaultive behavior; (c) accused Ellis of "*intellectualizing*;" (d) accused Ellis of exhibiting "*negative emotionality*;" (e) accused Ellis of engaging in "*grievance thinking*;"[12] (f) accused Ellis of "*always blaming others*;" and (g) accused Ellis of always "*grooming*."

119. On December 30, 2021, Ellis sent a "kite" to Stansell, requesting a copy of the alleged failed polygraph examination session summary transmitted by Jenks & Associates to the CDOC. As of the date of this Complaint, neither the CDOC nor Stansell has provided a "*session summary*," or a copy of the "*no opinion*" polygraph examination.

120. On January 4, 2022, during a SOTMP group session, Stansell proudly informed the group that she had been with the SOTMP program 11 years, and she had written "*5 billion*" adverse or punitive "*probations*."

121. During the January 4, 2022 SOTMP group session, Stansell was visibly and demonstrably hostile, argumentative, and aggressive toward Ellis, and raised her voice to such a level that a participant in SOTMP, returning from the restroom, asked why Stansell was "*yelling*."

122. As a result of the January 4, 2022 SOTMP group session, a general population inmate ("*Gato*") advised Ellis that there was much discussion in the "*yard*" regarding Stansell's "*fit of anger*," and asked Ellis why Stansell had been yelling at Ellis.

123. On January 4, 2022, during a SOTMP group session, Stansell:

(a) again accused Ellis of being argumentative and "*intellectualizing*," a claim that Ellis denied;

---

[12] "Grievance thinking" in reference to Ellis' questioning management outcomes during SOTMP group sessions, speech protected by the First Amendment.

(b) questioned Ellis' **Christian faith**, and stated, "*I know you* **claim** *to be one* [a Christian];"
(c) declared Ellis was in "*jeopardy*" of not going to the "hereafter"; and  (d) sarcastically asked
Ellis what the Bible said about those who harm children.

124.  On January 4, 2022, after Stansell's caustic question regarding what the Bible said about those
who harm children, Ellis extemporaneously quoted a Bible verse, "*It were better for that man if a*
*millstone were hung about his neck, and he were cast into the sea*,"[13] to which Stansell replied,
"*You will have a lot to answer for*."

125.  On January 4, 2022, during a SOTMP group session, Stansell told Ellis that Ellis' SOTMP
sponsor "*may be disqualified*" because Ellis' SOTMP sponsor had **sent a letter** to Mr. Nelson, the
SOTMP sponsor liaison regarding Ellis' progress in SOTMP.

126.  On January 4, 2022, during a SOTMP group session, Stansell advised Ellis that if the record
contained a known error regarding the results of a polygraph examination, no action would be
taken to correct the record, and "*Nothing will happen*."

127.  As a consequence of the January 4, 2022 SOTMP group session, wherein the entire group was
privy to Stansell's personal attack directed at Ellis, Ellis felt and continues to feel publically
humiliated and in danger as a result of Stansell's actions.

128.  As noted above in *paragraph 95*, Ellis memorialized concerns that Turner and **Stansell** were
conspiring to subvert the Parole Board's decision making process.

129.  On information and belief, Stansell has been in contact with Ellis' former spouse, who has made
statements that she will persuade the DOC to keep Ellis out of SOTMP and in prison.

130.  On May 2, 2022, Ellis made the following note, "*This morning I was called to medical where*
***Stansell*** *and Turner ambushed me. I was terminated from the program . . .* ***Stansell*** *was silent,*
*allowing Turner to take the lead*."

131.  Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired with the other
Defendants to interfere with the Parole Board's decision to place Ellis on "*tabled status*."

132.  Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired to act with
callous disregard and deliberate indifference to Ellis' health and safety, in violation of Ellis' right
to be free of *cruel and unusual punishment*.

133.  Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired to act with
callous disregard and deliberate indifference to Ellis' right to *Due Process*.

---

[13] Exact quote is, "And whosoever shall offend one of these little ones that believe in me, it is better for
him that a millstone were hanged about his neck, and he were cast into the sea." Mark 9:42 KJV.

134. Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired to act with callous disregard and deliberate indifference to Ellis' *liberty interest* created under SOLSA.

135. Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired to interfere with Ellis' right to *equal protection*.

136. Based upon Stansell's actions and failures to act, Ellis asserts Stansell conspired to act with callous disregard and deliberate indifference to Ellis' right to exercise his religion as he sees fit.

137. Based upon Stensell's actions and failures to act, Ellis asserts Stansell conspired to interfere with Ellis' rights under RLUIPA insofar as he was placed in the untenable position of having to abandon central tenants of his Christian faith in order to be returned to treatment, and to "successfully progress" in treatment, or maintain his adherence to Christianity, thereby being labeled with "criminal thinking errors," which are contrary to returning to treatment and successful progression.

### (d) Kyle Jones

138. Kyle Jones is the Chairman of the *Return to Treatment Committee*, and the SOTMP *Program Coordinator*.

139. On April 13, 2023, Ellis met with Case Manager Gabriel in her CTCF office in order to attend a virtual meeting with the *Return to Treatment Committee*.

140. During the April 13, 2023 virtual meeting, the following *Return to Treatment Committee* members were present: (a) Kyle Jones; (b) Star Hess; (c) Ryan Mosier; (d) Tracy Gremillion; and (e) Kaylene Archuleta.

141. During the April 13, 2023 meeting, Ellis was advised by Jones the meeting had been convened in order to discuss a January 29, 2023 letter Ellis had written to Alison Talley, the Interim Director of SOTMP.

142. During the April 13, 2023 meeting, Defendant Jones:

(a) opined that Ellis' answers to Ellis' September 26, 2022 *Return to Treatment Questionnaire* were inconsistent with his January 29, 2023 letter to Alison Talley; (b) accused Ellis of failing to previously allege wrongful termination from the SOTMP; (c) accused Ellis of writing letters which refuted his answers in the September 26, 2022 *Return to Treatment Committee Questionnaire*; and (d) brazenly accused Ellis of being a "*liar.*"

143. On April 15, 2023, Ellis sent a letter to Defendant Kyle Jones in response to the April 13, 2023 meeting.

144. On May 18, 2023, Ellis met with case manager Gabriel in her CTCF office in order to attend a follow-up virtual meeting with the *Return to Treatment Committee*.

145. During the May 18, 2023 virtual meeting, the following *Return to Treatment Committee* members were present: (a) Kyle Jones; and (b) Tracy Gremillion.

146. During the May 18, 2023 meeting, Case Manager Gabriel served Ellis with an unsigned letter from the *Return to Treatment Committee*, dated May 4, 2023.

147. On information and belief, the letter was drafted or approved by Jones, Chairmen of the *Return to Treatment Committee*, and SOTMP Coordinator.

148. The May 4, 2023 unsigned letter stated, "*Your **letter** you sent to the SOTMP in January of 2023 was staffed with the Returnees Committee, as well as the SOTMP leadership team...*"

149. The May 4, 2023 unsigned letter contained a new series of vague and ambiguous questions from the *Return to Treatment Committee*, and required Ellis to respond to the questions within 6 months, or face a downgrade to a sub code of "D[14]"

150. On June 17, 2023, Ellis sent his written responses to the May 4, 2023 letter from the *Return to Treatment Committee* / Defendant Jones *via* first class U. S. mail.

151. On June 23, 2023, Ellis received a letter from Jones dated June 22, 2023, in partial response to Ellis' kites sent to Gabriel on May 22, 2023. (*See Paragraphs 55 and 56 Supra*).

152. In the letter dated June 22, 2023 Defendant Jones wrote:

> (a) "*your S-code designation changed to an S5E after an SOTMP leadership staffing;*" (b) [the committee is] "*recommending further assignments to address your **criminal thinking errors**;*"[15] and, (c) "*More clinical information is required to assess the offender's risk to public safety prior to a decision regarding the needs and recommendations.*" (Emphasis added).

153. In the letter dated June 22, 2023, Jones also referred to Ellis' January 29, 2023 letter, and stated that the adverse actions were, "*... specifically, around the letter you wrote minimizing your accountability...*"

154. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired with the other Defendants to interfere with the Parole Board's decision to place Ellis on "*tabled status.*"

155. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to act with callous disregard and deliberate indifference to Ellis' health and safety, in violation of Ellis' right to be free of *cruel and unusual punishment.*

156. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to act with callous

---

[14] Sub code "D" reduces Ellis' "good time," and would require Ellis to re-apply to the SOTMP without credit for his prior successful progress in the Program.

[15] "*Criminal Thinking Errors,*" which presumably include a belief in God, Jesus Christ, and other basic tenants of Christianity. See **Section vii** *infra*.

disregard and deliberate indifference to Ellis' right to *Due Process*.

157. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to act with callous disregard and deliberate indifference to Ellis' *liberty interest* created under SOLSA.

158. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to interfere with Ellis' right to *equal protection.*

159. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to act with callous disregard and deliberate indifference to Ellis' right to exercise his religion as he sees fit.

160. Based upon Jones' actions and failures to act, Ellis asserts Jones conspired to interfere with Ellis' rights under RLUIPA insofar as he was placed in the untenable position of having to abandon central tenants of his Christian faith in order to be returned to treatment, and to "successfully progress" in treatment, or maintain his adherence to Christianity, thereby being labeled with "criminal thinking errors," which are contrary to returning to treatment and successful progression.

### *(e) Justin Ensinger*

161. Justin Ensinger is the Supervisor of the SOTMP at CTCF, is a member of the therapeutic treatment team, and a therapist at CTCF.

162. On August 12, 2021, during a SOTMP group session, Ellis expressed his disappointment with not being allowed to speak with his grandson on his 16th birthday. In response, Ensinger said that when Ellis' grandson is thirty, "*He will think back on his 16[th] birthday and think how wonderful it was that his grandpa had **not** called to talk with him.*"

163. On August 19, 2021, during a SOTMP group session, Ensinger made the following comments, "*Growth requires suffering*;" "*We are not here to support you guys!*;" and "*Snitches get stitches!*"

164. On August 19, 2021, during a SOTMP group session, Ensinger replied to Amber Duggard, a member of the therapeutic treatment team, when she acknowledged the prisoner's right to freedom of speech. In response to Duggard's comment, Ensinger sarcastically stated, "*Suck it up, buttercup.*"

165. On information and belief, in November 2021, Ensinger told a participant in SOTMP that, "*If it was up to me, none of you [sex offenders] would ever get out of prison.*"

166. On November 9, 2021, during a SOTMP group session, Ensinger coached everyone who had not passed their SOTMP sexual history polygraph examination to "not lie," but to admit things they did not do in order to pass the examination.

167. On January 4, 2022, during a SOTMP group session, Ensinger said the SOTMP participants should not "*get excited*" about a failed "*poly.*" Ensinger further qualified that statement by saying a

failed polygraph is "*no big deal.*"

168. On January 4, 2022, when asked why some prisoners had, in fact, been terminated for a failed or "*no opinion*" polygraph test, Ensinger refused to answer, and promptly changed the subject.

169. On information and belief, those prisoners who failed polygraph tests, and were terminated were Christian, Catholic, Protestant, Jewish, Mormon, or otherwise held religious beliefs contrary to the SOTMP's preference for agnostic SOTMP participants.

170. On April 19, 2022, during a SOTMP group session, Ensinger said to Ellis and others that if an inmate had been "*tabled*" by the parole board, "*We* [the therapeutic treatment team] *would have to kick his treatment into high gear.*"

171. In response to Ensinger's April 19, 2022 statement, Ellis reminded Ensinger that Ellis' parole application had been *tabled*, and Ellis asked how "*high gear*" would apply to his treatment.

172. In response to Ellis' question regarding how "*high gear*" would apply to Ellis, Ensinger responded, "*It wouldn't kick into high gear.* **We** [**the therapeutic treatment team**] *think you are a special case.*"

173. On information and belief, the term "special case" as used by Ensinger and other members of the SOTMP therapeutic treatment team was in fact a code for "*Christian*" or "*religious believer,*" or "*person of faith.*"

174. On April 19, 2022 as a result of the Defendants actions and failures to act, Ellis made the following note:

> "*A horrible class. They have succeeded in intimidating me and my family into silence, all under the blanket that I do not have a voice in society. Sure. They have stripped that from me. There does not seem to be a way forward, and I am unable to sleep.*"

175. On information and belief, on May 10, 2022, after Ellis' May 2, 2022 termination from the SOTMP, Ensinger threatened other SOTMP participants that they could also face arbitrary and capricious termination for "*using big words,*" and "*thinking they are smarter than I am.*"

176. Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired with the other Defendants to interfere with the Parole Board's decision to place Ellis on "*tabled status.*"

177. Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to act with callous disregard and deliberate indifference to Ellis' health and safety, in violation of Ellis' right to be free of *cruel and unusual punishment.*

178. Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to act with callous disregard and deliberate indifference to Ellis' right to *Due Process.*

179.  Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to act with callous disregard and deliberate indifference to Ellis' *liberty interest* created under SOLSA.

180.  Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to interfere with Ellis' right to *equal protection*.

181.  Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to act with callous disregard and deliberate indifference to Ellis' right to exercise his religion as he sees fit.

182.  Based upon Ensinger's actions and failures to act, Ellis asserts Ensinger conspired to interfere with Ellis' rights under RLUIPA insofar as he was placed in the untenable position of having to abandon central tenets of his Christian faith in order to be returned to treatment, and to "successfully progress" in treatment, or maintain his adherence to Christianity, thereby being labeled with "criminal thinking errors," which are contrary to returning to treatment and successful progression.

### (f) Potential DOE Defendant

183.  Amber Duggard was a member of the therapeutic treatment team, and a SOTMP therapist.

184.  On May 20, 2021, during a SOTMP group session, Duggard directed a comment toward Ellis, and criticized Ellis' Christian beliefs by opining that, "*You [Ellis] **Christians** often use religion as an excuse for your sexually assaultive behaviors.*"

### vii. Named and Unnamed Defendants' Equating Religious Beliefs with "Distorted Core Beliefs" and "Criminal Thinking Errors."

185.  On or about May 4, 2021, the SOTMP treatment team provided Ellis with a document entitled "*Distorted Core Beliefs*."

186.  The "*Distorted Core Beliefs*" document on page 19 contains a caption entitled, "*Criminal Thinking Error #8 **Religiosity**,*" which includes, *inter alia*, the following phrases:

> "***Examples of this error: The Lord will forgive me for my sins …*"; "*No man can judge me; I'll stand in front of the Lord for Judgment***."

187.  The "*Distorted Core Beliefs*" document on page 19 includes the following phrases under the caption "*Criminal Thinking Error #8 **Religiosity**"*:

> "***You are making this error when you use religion to support your criminal way of thinking. Your religious ideas are usually literal and concrete. Religion, like sentimentality, does not consistently deter your criminal thinking or action but <u>does</u> support our self image* [sic] *as a good and decent person. The <u>corrective</u> is for you to realize that your religious beliefs support a false positive sense of self-esteem. You must look at the big picture and understand that there is no justification for doing what is forbidden to you***." (underline in original).

188. The "*Distorted Core Beliefs*" document on page 31 contains a caption entitled, "*Thinking Errors Characteristic of the Criminal,*" which includes a subheading "#8 Religiosity," and expresses the following:

> "**The criminal uses religion to support his way of thinking and his criminality. His religious ideas are usually very rigid and concrete. Religion, like sentimentality, does not consistently deter his criminal thinking or actions, but it does support his self-image as a good and decent person.**"

189. Upon considering this so-called "criminal thinking error" (Religiosity), Ellis understood that his only path to "successful progression" in SOTMP treatment was to disavow his life-long belief in Christianity.

190. Ellis further understood that Ensinger and the SOTMP therapeutic treatment team's hostility towards himself and other religious program members was endemic to the program.

191. Ellis further understood that as long as the therapeutic treatment team considered Ellis a faithful Christian, Ellis would remain indefinitely incarcerated.

192. Ellis understood that the Defendants had placed a chilling effect on his free exercise of religion, and that the Defendants gave unequal access and preference to agnostic participants by virtue of the participants' lack of "religiosity."

## 4.    INDIVIDUAL AND CUMULATIVE EFFECTS ON ELLIS

193. Ellis has suffered, and continues to suffer **emotionally** and **mentally** as a result of the removal from, and subsequent denial of SOTMP treatment, including, but not limited to:

> (a) *anxiety*; (b) *depression*; (c) *general fear*; (d) *hopelessness*; (e) *low self-esteem*; (f) *feelings of helplessness*; (g) *insomnia*; (h) *confusion*; (i) *dissociative disorder*; (j) *flashbacks*; (k) *loss of feelings of well-being*; (l) *chronic unhappiness*; (m) *fear for personal safety*; (n) *loss of internal harmony*; (o) *lack of concentration*; (p) *irritability*; (q) *loss of peace*; (r) *hyper-vigilance*; (s) *loss of enjoyment of life*; (t) *and other symptoms consistent with Post Traumatic Stress Disorder.*

194. Ellis has suffered, and continues to suffer **physically** as a result of the removal from, and subsequent denial of SOTMP treatment, including, but not limited to:

> (a) *insomnia*; (b) *severe headaches*; (c) *lower back pain*; (d) *inflammation*; (e) *severe neck pain resulting from involuntary movements brought on by PTSD*; (f) *severe shoulder pain resulting from involuntary movements brought on by PTSD*; (g) *chronic immune deficiency leading to repeated viral and bacterial infections*; (h) *joint pain*; (i) *severe lethargy*; (j) *lowered immune response; and* (k) *malaise.*

195. Ellis has suffered, and continues to suffer *religious conflict* as a result of the SOTMP's characterization of religiosity as a "*criminal thinking error,*" insofar as it has the effect of undermining Ellis' religious beliefs, and forces him to re-evaluate the teachings of Christ.

196. Ellis has suffered, and continues to suffer the loss of his *liberty interest* due to Defendants' refusal to enroll him in statutorily mandated SOTMP treatment. See e.g., *Lerner v. Stancil*, U.S. Dist. LEXIS 90078, 2023 WL 3595998 (D. Colo. May 23, 2023).

197. Ellis has suffered, and continues to suffer the loss of his *liberty interest* to participate in the program due to Ellis' wrongful termination from SOTMP, and the Defendants' refusal to afford Ellis his constitutionally protected right to Due Process of Law.

198. Ellis has suffered, and continues to suffer the loss of his *human potential* due to Defendants' deliberate indifference, callous disregard, malevolent acts and failures to act, and conscious retaliation arising from Ellis' reasonable efforts to avail himself of his 1st, 6th, 8th, and 14th Amendment rights.

199. Ellis has suffered, and continues to suffer the *loss of affection and companionship* from his family and friends due to Defendants' deliberate indifference, callous disregard, malevolent acts and failures to act, and conscious retaliation arising from Ellis' reasonable efforts to avail himself of his 1st, 6th, 8th, and 14th Amendment rights.

200. Ellis has suffered, and continues to suffer *unconstitutional conditions of confinement* in the form of religious persecution.

201. Ellis has suffered, and continues to suffer *unconstitutional conditions of confinement* as a result of the Defendants placing a chilling effect on his ability to file grievances against the CDOC's application, and misapplication of the SOLSA statute, and the CDOC's refusal to abide by SOLSA's legislative mandate.

202. As evinced by *further factual enhancements* set forth above, and throughout this Complaint, Ellis has suffered, and continues to suffer *unconstitutional conditions of confinement* as a consequence of the totality of Defendants' actions and failures to act.

**E.      PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?   __X__ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):            Raemisch
Docket number and court:          872 F.3d 1064 (10th Cir. 2017)
Claims raised:                            6th Amendment
Disposition: (is the case still pending?

| | | |
|---|---|---|
| Has it been dismissed? Was relief granted?) | Denied | |
| Reasons for dismissal, if dismissed: | no 6th Amendment violation. | |
| Result on appeal, if appealed: | Writ of cert. to US Supreme Court Denied | |

**F.      ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?
    __X__ Yes ___ No (*check one*)

Did you exhaust administrative remedies?
    __X__ Yes ___ No (*check one*)[16]

**G.      REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST*

*FIRST CLAIM FOR RELIEF*
*42 USC Section 1983 - 1st Amendment U.S Constitution*

203.  Ellis hereby incorporates all other allegations set forth in this Complaint.

204.  The First Amendment protects inmates from retaliation for filing grievances where an inmate was engaged in constitutionally protected activity.

205.  As demonstrated above, the Defendants caused Ellis injures that chilled his ordinary firmness from continuing to engage in protected activities i.e., freedom of speech, grieving the SOTMP program, and grieving the Defendants' actions and failures to act.

206.  The Defendants' adverse actions were substantially motivated as a response to Ellis' exercise of constitutionally protected conduct, i.e., seeking redress from the CDOC via formal and informal grievances.

207.  But for the retaliatory motive with respect to seeking redress, Ellis would have not been removed from SOTMP, and his requests for reenrollment into SOTMP would not have been denied.

---

[16] Ellis followed the DOC grievance procedures, however, the DOC determined the Administrative Regulations superseded Ellis' constitutional rights, and stated: "*The decision of the SOTMP Termination Review Panel is final. The offender may not appeal, nor is the decision grievable.*" [sic] Thus, by executive decree, the DOC has converted Ellis' indeterminate sentence into a life sentence without the possibility of parole.

208. As a result, Ellis has suffered, and without this Courts intervention, will continue to suffer
irreparable injury.

209. The First Amendment also protects inmates from interference with their religious freedoms.

210. As demonstrated above, the Defendants' actions chilled Ellis' ordinary firmness in continuing to
practice his religion, and to have faith in fundamental Christian beliefs.

211. The Defendants' adverse actions were substantially motivated as a response to Ellis' exercise of
constitutionally protected conduct, i.e., freedom of religion.

212. But for the Defendants' characterization of Ellis' Christian beliefs as a "*criminal thinking error*"
and a "*distorted core belief*" Ellis would not have been removed from SOTMP, and his repeated
requests for reenrollment into SOTMP would not have been denied.

213. As a result, Ellis has suffered, and without this Courts intervention, will continue to suffer
irreparable injury.

### SECOND CLAIM FOR RELIEF
#### 42 USC Section 1983 – 6th and 14th Amendments, U.S Constitution

214. Ellis hereby incorporates all other allegations set forth in this Complaint.

215. Procedural Due Process ensures that States will not deprive a party of a liberty interest without
engaging fair procedures to reach a decision, while Substantive Due Process insures the States will
not deprive a party of a liberty interest for an arbitrary reason regardless of the procedures used to
reach that decision.

216. A Due Process claim under the 14th Amendment can be maintained where the government has
interfered with a constitutionally cognizable liberty interest.

217. A liberty interest may be implicated when State law (SOLSA) and prison regulations create a
liberty interest to which Due Process protections apply.

218. Considering the unique circumstances SOLSA presents, it creates a liberty interest in Ellis' access
to treatment because it mandates treatment.

219. By its plain language, SOLSA contemplates treatment as an integral part of sex offender
incarceration and supervision.

220. Colorado has created a scheme in which a sex offender is required to undergo treatment, and the
CDOC lacks discretion to withhold treatment.

221. SOLSA mandates sex offender treatment, which creates a "legitimate claim of entitlement" to
treatment. That, in turn, creates a liberty interest for Due Process purposes.

222. Defendants have shown, and continue to show deliberate indifference to Ellis' liberty interest in

access to and participation in SOTMP.

223. The 6th Amendment requires the Defendants to protect prisoners from a substantial risk of serious harm to their health and safety. It also requires Defendants to provide for prisoner's serious medical and mental health needs.

224. The Defendants have failed to protect Ellis from a substantial risk to Ellis' medical and mental health needs.

225. As a result, Ellis has suffered, and without this Court's intervention, will continue to suffer irreparable injury.

### THIRD CLAIM FOR RELIEF
### 42 USC Section 1983 – 8th and 14th Amendments, US Constitution

226. Ellis hereby incorporates all other allegations set forth in this Complaint.

227. The 8th Amendment forbids "Cruel and Unusual Punishment." Accordingly, the Constitution requires the defendant prison officials to protect incarcerated persons from a substantial risk of serious harm to their health and safety.

228. The 8th Amendment forbids deliberate indifference to incarcerated person's serious medical and psychological needs.

229. An 8th Amendment claim requires both a showing that the conditions are sufficiently and objectively severe, and a showing that the defendant prison officials were subjectively aware of a substantial risk of serious harm to an inmate and yet callously acted, or failed to act, despite that awareness.

230. Where an inmate has a constitutionally protected liberty interest, as here, to State mandated treatment and rehabilitation, the inmate is entitled to be confined in an environment which does not result in wanton and unnecessary physical and/or mental pain and suffering.

231. The Tenth Circuit has recognized circumstances in which the 8th Amendment protects prisoners from wanton and unnecessary psychological harm, for example, disseminating humiliating but penologically irrelevant details of a prisoner's sexual or religious history. See *Perkins v. Kan. Dep't of Corr.* 165 F.3d 803-11 (10th Cir. 1999).

232. Defendants have shown, and continue to show deliberate indifference by engaging in actions which expose Ellis to the risk of imminent physical harm, and place Ellis in fear for his personal safety.

233. Defendants have shown, and continue to show deliberate indifference to a substantial risk of serious harm to Ellis, and deliberate indifference to Ellis' serious medical and psychological needs,

27

in violation of the 8th Amendment.

234. Defendants made intentional decisions that resulted and continue to result in the unsafe and dangerous conditions of confinement described in this Complaint.

235. Defendants have not taken reasonable measures to abate or reduce the risks of serious harm from the conditions that they, themselves, have created and fostered.

236. Reasonable custodians under the circumstances would have understood the high degree of risk involved, and thus the adverse consequences of Defendant's actions and failures to act are obvious.

237. Defendants knew, know, and have known of the risks their actions and failures to act pose to Ellis.

238. Defendants have subjected Ellis to unsafe and dangerous conditions of confinement that places Ellis at substantial risk of harm.

239. Defendants have demonstrated both subjective and objective deliberate indifference to the risks Ellis will continue to suffer in the form of physical, psychological and emotional harms.

240. Defendants knew, know, and have known the risk their continued failure to provide proper treatment poses to Ellis. Indeed, the risks are, and have been, obvious. Nevertheless, Defendants have disregarded, and continue to disregard the substantial risk of serious harm.

241. As a result, Ellis has suffered, and without this Court's intervention, will continue to suffer irreparable injury.

### FOURTH CLAIM FOR RELIEF
#### 42 USC Section 1985(3) Civil Conspiracy

242. Ellis hereby incorporates all other allegations set forth in this Complaint.

243. The essential elements of a 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.

244. Defendants conspired to derive Ellis of Equal Protection or equal privileges and immunities under the law, and acted in furtherance of this objective.

245. Defendants have engaged in a conspiracy to retaliate against Ellis due to the exercise of Ellis' protected rights under the U.S. Constitution, i.e., freedom of religion (Christian faith).

246. As a result, Defendants injured Ellis by depriving him of SOTMP treatment.

247. The intent behind the conspiracy was and remains grounded in invidious and discriminatory personal animus, the exercise of Ellis' First Amendment rights, and Ellis' Christian faith and beliefs.

248. As a result, Ellis has suffered, and without this Court's intervention, will continue to suffer irreparable injury.

### FIFTH CLAIM FOR RELIEF
#### 42 USC 2000cc - Religious Land Use and Institutionalized Persons Act

249. Ellis hereby incorporates all other allegations set forth in this Complaint.

250. The Congress of the United States enacted the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) in order to prohibit discrimination by prison officials against a prisoner's exercise of their religious beliefs.

251. The Religious Land Use and Institutionalized Persons Act protects an incarcerated person from having a substantial burden placed upon his exercise of religion.

252. The Defendants have placed a chilling effect on Ellis' free exercise of religion, and have given unequal access and preference to agnostic participants of SOTMP by virtue of the favored participants' lack of "religiosity."

253. The Defendants' implementation of anti-religious and anti-Christian policies contributed to Ellis being terminated from the sex offender treatment program.

254. As a result of the Defendants' actions or failures to act, the Defendants failed to provide a broad protection for Ellis' exercise of his religion.

255. The actions of the Defendants significantly inhibited or constrained, and continue to inhibit and constrain Ellis' conduct and expression of his Christian faith.

**H.    PRAYER**

256. Ellis respectfully requests that this Court:

  (a) Enjoin Defendants from retaliating against Ellis, including but not limited to punitive placement in "Administrative Segregation," or retaliatory movement from CTCF to another prison in or outside of Colorado.

  (b) Order that the Defendants reinstate Ellis into the SOTMP program at the point where Ellis was terminated, without requiring Ellis to complete additional assignments, homework, polygraph examinations, or "therapy" sessions.

  (c) Order that the Defendants accept Parts 2 and 3 of Ellis' *Risk Management Plan*, then schedule an appointment so Ellis may make a disclosure to Ellis' SOTMP sponsor, following which, Ellis is to be placed on "maintenance status," without further conditions.

  (d) Order that the Defendants, after placing Ellis on "maintenance status," inform the parole board Ellis has successfully completed SOTMP.

(e) Award compensatory damages to be proven at trial.

(f) Award punitive or exemplary damages to be proven at trial.

(g) Award attorney, investigator, court costs and paralegal fees and costs.

(h) Award any further injunctive, declaratory, or other relief authorized by this Court that this Court deems necessary and appropriate.


## I.    PLAINTIFF'S SIGNATURE AND VERIFICATION

I, Mark S. Ellis, declare under penalty of perjury that I am the plaintiff in this action, that I have prepared and read this Complaint, and that the information in this Complaint is true and correct, except to matters alleged on information and belief, and, as to those I believe them to be true, and supportable after discovery. See 28 U.S.C. § 1746; 18 U.S.C. § 1621. I further declare under the penalty of perjury that I have read this Complaint, and hereby **VERIFY** that the facts, circumstances, and allegations in this Complaint are true and correct, except to matters alleged on information and belief, and, as to those, I believe them to be true and supportable after discovery.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: 1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; 3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) the Complaint otherwise complies with the requirements of Rule 11.

Executed at Canon City, Colorado on January 8, 2024

Mark S. Ellis
115149
Colorado Territorial Correctional Facility
P.O. Box 1010
Canon City, CO 81215-1010

January 8, 2024
Date

(Revised November 2022)



US POSTAGE $00.00⁰

neopost℠
01/09/2024
ZIP 81212
041L10M17AE

Colorado Department of Corrections
Name MARK S. ELLIS
Register Number 115749
Unit CTCF
Box Number 1010
City, State, Zip CANON CITY C0 81215

United States Magistrate Judge
United States District Court
Alfred A. Arraj U.S. Courthouse
901 19th Street
Denver, Colorado
80294-3589

CTCF

R. MARTINEZ    13107

DATE REC'D    1-8-24

11/5/19    ELLIS